(C.D. 3028)

LINK-BELT COMPANY
JAMES LOUDON & COMPANY, INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 8, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Carl Eardley,* Acting Assistant Attorney General (*Arthur H. Steinberg,* trial attorney), for the defendant.

Before RAO and FORD, Judges, and DONLON, Senior Judge

DONLON, Judge: A case of machine parts, for assembly into what is described as mining machinery, was imported at the port of San Francisco on September 12, 1960, from West Germany. The importation was entered under section 308, Tariff Act of 1930, as amended,

which provides for duty free entry, under bond, for "samples * * * solely for use in taking orders for merchandise, or for examination with a view to reproduction." A bond was filed, the condition being that if the imported articles were not timely exported there would be paid liquidated damages of one and one-quarter times the regular duty. The articles were not exported.

There is no issue before us with respect to plaintiffs' liability to pay the liquidated damages. What is at issue is the duty rate on which the payment is to be computed.

The imported articles were liquidated by the collector at San Francisco as machinery having an electrical element as an essential feature, classifiable under modified paragraph 353. It is not seriously disputed. that the machinery at bar is mining machinery; but if there were controversy as to that fact, the record before us would support a finding that it is mining machinery.

On trial plaintiffs adduced evidence purporting to show that the electrical element was not essential, within the meaning of paragraph 353, for the reason that, at no great expense, the machinery could be converted to use hydraulic power. We find this evidence not persuasive. However, we do not discuss it here because plaintiffs, in their brief, concede that the electrical element is, in fact, an essential feature of the mining machinery at bar.

The issue narrows down, therefore, to a question of relative specificity. Is this mining machinery, having an electrical element as an essential feature, more specifically described in paragraph 353, as machinery having an electrical element and not specially provided for, the liquidation classification; or under paragraph 372, as plaintiffs claim, as other machinery not specially provided for?

The competing provisions, in relevant part, are as follows:

Paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade (T.D. 52739) :

Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal, and not specially provided for:

    *        *        *        *        *        *        *

    Other * * *_____ 13¾% ad val.

Paragraph 372, Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade (T.D. 54108) :

Machines, finished or unfinished, not specially provided for:

    *        *        *        *        *        *        *

    Other * * *_____ 11½% ad val.

In both, the provision claimed by plaintiffs and that relied on by defendant, articles are excluded which are specially provided for in some tariff enumeration. As to the rule of construction in such cases, our appeals court laid down the guide lines, in Judge Rich's opinion, in *United States* v. *Electrolux Corporation*, 46 CCPA 143, C.A.D. 718.

In making a choice between paragraphs 339 and 353 there is one further point with which we wish to deal. It will be observed that each of these paragraphs contains a "not specially provided for" clause. Both parties have urged upon us the view that we should, because of this fact, read the paragraphs as though this clause appeared in neither of them, the appellant having stated at the argument that the clauses "cancel out." Statutory construction and the application of statutory language to specific fact situations is not algebra nor an exact science akin to mathematics. We must take all of the words Congress wrote into the statutory provisions and do our best to gather therefrom what it was Congress was trying to accomplish. The mere happenstance that a paragraph asserted by the importer to be applicable contains a "not specially provided for" clause is no reason for reading a similar clause out of the paragraph relied on by the collector. We must heed the clause for the simple reason that it is there. This being the case as to both paragraphs, we can ignore it in neither. As we have already suggested, the fact that it appears in paragraph 339 is at least some indication that Congress believed that some household utensils might be classified elsewhere than in paragraph 339, notwithstanding the fact it is a use provision. The presence of the n.s.p.f. clause in paragraph 353, on the other hand, does not detract from this indication and is not a reason for disregarding the clause in paragraph 339. [P. 149.]

The gist of plaintiffs' argument in support of their claim to paragraph 372 classification is that Congress intended to include mining machinery in the "other" machinery enumeration of that paragraph; and that the cases hold that machinery which is enumerated in paragraph 372 are to be classified thereunder even when the machinery has, as here, an electrical element or device as an essential feature.

The first argument appears to ignore the underlying rationale of judicial decision whenever articles, which are not *eo nomine* enumerated, are held to be included within an omnibus provision for "other" articles. The theory, in such cases, is that Congress intended the inclusion. The function of the courts is to interpret Congressional intent and apply it to particular facts.

Here we have merchandise which, on the facts of record, is described in *both* paragraphs 353 and 372, but is not *eo nomine* enumerated in either of those paragraphs. The issue, as earlier stated, is the relative specificity of the two provisions in application to the machinery at bar.

Where an article is *eo nomine* enumerated elsewhere, the cases seem clear that the *eo nomine* enumeration will prevail over the more general language of paragraph 353. *Textile Printing & Finishing Co., Inc.* v. *United States*, 49 CCPA 24, C.A.D. 789 (textile machinery); *Fred Roberts Co.* v. *United States*, 46 Cust. Ct. 254, C.D. 2265 (brushes); *Wallace Pencil Co.* v. *United States*, 8 Cust. Ct. 1, C.D. 572 (printing machinery).

In *Roberts, supra*, Judge Mollison discussed the cases and the underlying judicial principles, as follows:

We may say that our research of the adjudicated cases relating to the provisions of paragraph 353 does not indicate that it has ever been held that any given article would necessarily be excluded from other provisions of the tariff act which would embrace it on the sole ground that it had, as an essential feature, an electrical element or device. In other words, paragraph 353, *supra*, does not, as to any merchandise which is within its description, invade and supersede all other tariff enumerations or designations which might also be applicable to such merchandise. The language in which the provision is framed is not so sweeping, clear, and definite as to indicate that any or all imported articles having as an essential feature an electrical element or device must be classified thereunder to the exclusion of all other tariff enumerations which may be applicable to them. *Kayser & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 474, T.D. 41367.

This view is supported by numerous decisions of this and our appellate court involving questions of the relative specificity of the provision in paragraph 353, *supra*, here in question when in competition with other tariff designations. Among such cases may be mentioned *Raymond Saltel* v. *United States*, 2 Cust. Ct. 428, C.D. 170, involving a competition between the provision in paragraph 353 and the provision in paragraph 368 for clockwork mechanisms; *Wallace Pencil Co.* v. *United States*, 8 Cust. Ct. 1, C.D. 572, paragraph 353 and the provision in paragraph 372 for printing machinery; and *United States* v. *Electrolux Corporation*, 46 C.C.P.A. 143, C.A.D. 718, paragraph 353 in comparison with the provision in paragraph 339 for household utensils.

Proceeding, therefore, to the determination of the question of relative specificity raised in this case, on the record made and for the reasons hereinbefore stated, we conclude that the articles at bar fall within the language of both paragraph 1506 and paragraph 353, *supra*. We also conclude that the tariff term "brushes" in paragraph 1506, in its application to the articles at bar, is relatively more specific than the description "articles having as an essential feature an electrical element or device." We base this conclusion on the fact that the term "brushes," being the name of the articles, is a more exact and specific designation of them than the broad, general description which covers them by reason of incorporation therein of an electrical element or device which is essential to their operation.

No legislative intent, long-continued administrative practice, or judicial decision contrary to this conclusion is apparent or has been brought to our attention. [Pp. 257, 258.]

Here, of course, there was not at the time of this importation any *eo nomine* enumeration for mining machinery. Our determination as to relative specificity must be made between, on the one hand, "other machinery", concededly applicable *if* the mining machinery at bar did not have, as it does have, an electrical element as an essential feature; and, on the other hand, a provision for all articles having an electrical element as an essential feature.

The leading case, often cited in support of paragraph 353 classification, is *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050; reversing *Dryden Rubber Co.* v. *United States*, 63 Treas. Dec. 1601, Abstract 24470. The merchandise there involved was a machine for cutting rubber. The trial court held the machine dutiable under paragraph 372 as "other machinery", and classified separately the two electric motors which accompanied the machinery, under paragraph 353.

The appeals court held that the importation was not severable and classified the entity under paragraph 353.

The issue before us was before this division in *Davies Turner & Company* v. *United States*, 33 Cust. Ct. 278, C.D. 1665. The merchandise there was described as electrically operated meat slicing machines, and the competing provisions were the same as those before us here. However, in *Davies Turner*, although the machines in the condition as imported were wired to use electricity as their operating power, the motors to do this were not imported but were installed in this country. A majority of the division held the imported machinery dutiable under paragraph 353, as plaintiff claimed. Judge Ford dissented, on the ground that, in condition as imported, the machinery did not have an electrical element.

Here, however, there was a motor as part of the importation.

For the reasons stated in *Davies Turner* and on the record before us, we hold that the mining machinery at bar is more particularly described in paragraph 353 than in paragraph 372.

We have studied all the cases cited by the parties and others which our research disclosed. It seems unnecessary to encumber this opinion with detailed discussion of them.

Judgment will be entered for defendant.